## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

AUG 12 2025

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

**FRANCIS CARBASHO**

By His Next Friend,

Helen T. Carbasho

_____

             Plaintiff, Pro Se

v.

**Wheeling Hospital, Inc.**

and

**West Virginia University Health System**

_____

             Defendants

COMPLAINT

CIVIL ACTION NO: 5:25 cv 176

**JURISDICTION:**

This court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 as this action arises under federal law, including the U.S. Constitution and federal law. Supplemental jurisdiction is invoked under 28 U.S.C. § 1367 for state law personal injury claims. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the events giving rise to these claims occurred at Wheeling Hospital, Inc. in Wheeling, West Virginia.

1

## INTRODUCTION:

1. This is a civil rights and personal injury action brought under 42 U.S.C. § 1983, the Fourteenth Amendment to the Constitution, the West Virginia Constitution, Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and state tort law arising from the egregious mistreatment of Plaintiff Francis Carbasho during his confinement in a locked room with inhumane conditions in the Emergency Department (not an actual hospital room) at Wheeling Hospital from Aug. 14 to Aug. 17, 2023. Plaintiff, who suffers from a long history of mental health issues, including bipolar disorder, anxiety, depression and hallucinations, as well as current opioid recovery issues, was experiencing a medical and psychiatric crisis.

2. This complaint is based on Defendants' deliberate indifference, disregard, and unconstitutional treatment of Plaintiff, who was wrongly confined, subjected to cruel and unusual punishment, disability discrimination, negligent infliction of physical and emotional harm and abuse while in acute psychiatric distress, and unlawful restraint in a locked room with no restroom, dangerous conditions (e.g., mattress thrown on the floor), and a Wheeling police officer/hospital security guard stationed outside his door, not at his bedside as stated in hospital notes. When Plaintiff fell repeatedly, the officer/security guard rendered no assistance. All injuries to his head and multiple parts of his body are documented in photos taken by his mother.

3. Plaintiff does not bring a claim for medical malpractice and makes no allegations of medical negligence. This complaint stems from custodial mistreatment, deprivation of liberty, unsafe confinement conditions, and violation of federally protected rights, including, but not limited to, due process guaranteed by the Fourteenth Amendment.

4. Defendants acted under color of state law by detaining Plaintiff in a locked room in the emergency department from Aug. 14 to Aug. 17, 2023, while coordinating with the Wheeling Police Department and hospital security to guard his locked room. Hospital staff informed Wheeling Policeman Robert Kovalyk that Plaintiff was under the influence of Methadone and Xanax when he punched a wall with his fist on Aug. 14, the same day he was taken by his mother, Tina Carbasho, to the Emergency Department seeking help for her son who was suffering from acute psychiatric distress. When brought to the Emergency Department, Plaintiff was observed by staff who later authenticated the Plaintiff's mental capacity at the time he hit a wall with his hand when they described in their notes that he was suffering from "confusion/hallucinations/agitation." A day later on Aug. 15, staff noted that Plaintiff's condition had worsened and he was unable to participate in any evaluation because he "appears to be in acute hypoactive delirium that may have been caused by multiple factors (sedative/hypnotic withdrawal vs. seizures vs. underlying neurocognitive disorder)." Plaintiff's level of consciousness was listed as "lethargic, unable to participate in interview" with "psychomotor slowing" and in a "mental state that is altered." Hospital staff cited his thought process, thought content and knowledge as "UTA," unable to assess: They further noted that his insight and judgement were "poor" and they were unable to assess his mood. However, on the same day (Aug. 15, 2023) when they documented the Plaintiff's worsening psychiatric condition, members of the Defendant Wheeling Hospital's staff and a member of their security team made it clear to the Wheeling Police Department (specifically to Officer Robert Kovalyk) that they wished to proceed with charging the Plaintiff with destruction of property, because he hit a wall and was observed later allegedly trying to break a chair – this while

he was suffering from an altered mental state, delirium and neurocognitive disorders, according to the Defendants' own words.

5.  Defendants acted under color of state law by detaining the Plaintiff in a locked room while coordinating with the Wheeling Police Department to guard his room, which had to be unlocked by the policeman before his mother, dad and son could visit him. Defendant informed the police department on Aug. 15, 2023 to proceed with a destruction of property charge, equating to a retaliatory criminal charge due to a heightened concern about a small infraction on the wall rather than caring for a patient in acute psychiatric distress who was not aware of his actions. In fact, the warrant for the Plaintiff's arrest was dated Aug. 15, 2023 in Ohio County Magistrate Court, while Plaintiff was in the Defendants' own words in an altered state, and I submit that he was not aware of his actions because he did not even recognize his mother, Tina; father, Frank; or his son, Tony. The state police executed the arrest warrant on Dec. 9, 2023 at Mr. Carbasho's place of employment, causing embarrassment and resulting in this charge now appearing when potential employers conduct background checks. He was forced to plead guilty to a misdemeanor charge of destruction of property to avoid the trips to Ohio County Magistrate Court after various delays and he is still paying monthly fees on a $500 fine plus court costs.

6.  Defendants acted jointly with local law enforcement, operated as a state actor under color of law and are subject to liability under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act.

**PARTIES:**

1. Plaintiff Francis Carbasho is a 44-year-old man with a history of psychiatric disability, including bipolar disorder, anxiety and depression, for which he is currently under treatment; and a history of opioid use recovery, for which he is also currently under treatment. In August of 2023 (from Aug. 14 to Aug. 17), Mr. Carbasho was detained in a locked room in the Emergency Department without ever being admitted to an actual hospital room. The inhumane conditions included the lack of a bathroom, not even a toilet; an unusable sink blocked by a pull-down barrier; the lack of a bed, but rather a mattress thrown on the floor with part of the framing still attached – posing a major tripping hazard for Mr. Carbasho to get down on the mattress to rest or to stand up, especially given his unsteady movement and extreme state of altered mental status, words used repeatedly by the Defendants' staff in their notes. The conditions were so poor that he did not have a water pitcher in his room on or about Aug. 14 and his parents witnessed him drink his own urine from a plastic urinal. On another occasion, which is documented, the Plaintiff urinated on the floor because he did not have a toilet in this locked room and nowhere to wash his hands since the sink was blocked by a roll-down barrier.

2. Helen Carbasho, although not a plaintiff in this complaint, is a long-time caregiver and the paternal aunt of Mr. Carbasho. She handles activities that his mental health issues prevent him from doing, such as meeting deadlines for paying bills, actually paying the bills, scheduling and keeping doctors' appointments, reminding him to take his medications, ensuring his medications are filled at the pharmacy each month, helping him buy groceries, and protecting his interests in all manners possible. A letter from Plaintiff suggesting that his aunt serve as his Next Friend for this matter is included, along with a

5

Declaration of Next Friend signed by Ms. Carbasho outlining why she is qualified to serve in this capacity.

3. Defendant Wheeling Hospital, Inc. is a medical facility in Wheeling, West Virginia, and is owned and operated by Defendant West Virginia University Health System. Both Defendants are capable of monitoring psychiatric patients in a humane manner. Instead, Plaintiff was dismissed because he was suffering, in part, from withdrawal from opioid medications and, therefore, treated like a criminal instead of a patient with an arrest warrant issued just one day after his mother took him to the Emergency Department and while he was still in the care of Wheeling Hospital. The hospital's own words of staff members show the Plaintiff was in acute mental distress and he could not be evaluated because he was incoherent, rambling, and talking to himself. His inability to recognize his parents and son give credence to the fact that he was unaware that he had hit a wall with his fist and such action could not have been done with intent or willfulness given his altered mental state – a mental state where he could barely keep his eyes open (again noted in hospital records) and he could hardly stand or talk (as evidenced in video taken by his mother).

## CLAIMS FOR RELIEF:

Count I: Fourteenth Amendment – Substantive Due Process Violation (42 U.S.C. § 1983)

1. Defendants acted under color of state law in depriving Plaintiff of his rights secured by the Fourteenth Amendment, including the right to bodily integrity, due process, and freedom from punishment without criminal conviction. Defendants deprived Mr. Carbasho of his substantive due process rights by confining him in an unsafe,

unsanitary environment behind a locked door where he was basically forgotten, "out of sight, out of mind," and he was treated like a drug addict, rather than a mental health patient.

2. Defendants violated clearly established constitutional rights of the Plaintiff with their blatant indifference to Mr. Carbasho's medical and psychiatric needs, their confinement in unsanitary, uncomfortable, unforgiving and unsafe conditions, and their preferred attention to bringing immediate criminal action against a mental health patient, while he was in an altered mental state, was not coherent, and could not keep his eyes open, stand or speak.

3. The Fourteenth Amendment prohibits deliberate indifference to serious medical needs and conditions of confinement. Mr. Carbasho was confined in a medical setting where the hospital contacted law enforcement without due cause and basically imprisoned him in the Emergency Department for four days.

4. See Supreme Court case Youngberg v. Romeo, 457 U.S. 307 (1982) (involuntarily confined individuals are entitled to safe conditions and personal security).

5. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983) (governmental entities must ensure medical care for detainees and those in custody).

6. Defendants' actions in failing to provide a toilet, not providing a bed (just a mattress with part of the frame still attached thrown on the floor creating a fall hazard) constitute punitive treatment without due process. Every mental health patient has a right to humane, ethical treatment, rather than the inhumane treatment that was afforded to the Plaintiff.

7. Filing a criminal charge against a man with mental health issues for minor damage caused to a wall, not to any person, while he was in substantial psychiatric distress and still hospitalized, is retaliatory and shocks the conscience.

Count II: Violation of the Americans with Disabilities Act (Title II, 42 U.S.C. § 12132)

1. Plaintiff Mr. Carbasho is a qualified individual with a disability under the ADA. Notably, he is qualified due to the confirmed diagnoses of bipolar disorder with psychotic features (F31.5); generalized anxiety disorder (F41.1); major depression, and opioid use disorder for which he receives regular treatment. Episodes of severe mental health crisis substantially limit Mr. Carbasho's ability to think clearly, care for himself, interact with family members, respond to questions, perform simple tasks, acclimate to his surroundings, comprehend where he is, cause hallucinations, and make it important that he has regular contact with familiar faces like his mother, father, son and aunt. These conditions are explicitly or implicitly recognized by federal courts and the Department of Justice as qualifying disabilities under the ADA and Section 504 of the Rehabilitation Act as long as they substantially limit one or more major life activities, which they do, especially during acute bouts of psychiatric stress or opioid withdrawal.

2. Mr. Carbasho was in a hospital, not a criminal facility. The ADA Network and the Department of Justice guidelines confirm that opioid addiction, withdrawal and mental illnesses like bipolar are protected conditions.

3. See Pa. Dep't of Corr v. Yeskey, 524 U.S. 206 (1998) (ADA applies to public institutions, including hospitals and prisons).

8

4. See Disability Rights S.C. v. McMaster, 24 F.4th 893 (4th Cir. 2022) (individuals with mental illness must be protected from unnecessary segregation and denied services).

5. Defendants kept Plaintiff in isolation in a guarded room like an animal for days without meaningful human contact, while hospital staff told his parents, his son and the rest of his family not to visit after the first day (Aug. 14, 2023). Family was only permitted to visit when the Defendant was getting ready to discharge Plaintiff. The familiar faces, caring voices, and love of family members were reasonable and necessary, and should have been permitted to stabilize the Plaintiff's mood.

6. Hospital notes indicate that on Aug. 16, 2023, Plaintiff remained confused with an altered mental state. This was two days after being locked in a room in the Wheeling Hospital Emergency Department (again, he was never admitted to a regular hospital room where patients have the dignity of bathroom facilities and enhanced contact with visitors and staff members). The hospital notes also recommend frequent orientation and encourage frequent visits from family members and friends to prevent further delirium. Despite the hospital's own notes and recommendations, the Plaintiff's parents were told on Aug. 15, 2023 that it would be best if the Plaintiff had no visitors. The hospital was aware and had documented that the Plaintiff suffers from suicidal ideations and was told by his mother and aunt that it was important for him to have family support.

7. Defendants are public entities subject to Title II and its guidelines.


Count III: Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §794)

1. Defendants receive federal funds and are subject to the Rehabilitation Act.

2. The mistreatment of the Plaintiff was discriminatory based on his mental health status and opioid withdrawal.

3. See Alexander v. Choate, 469 U.S. 287 (1985) (Section 504 prohibits discrimination based on disability in federally funded programs)

Count IV: State Law Personal Injury – Negligent Confinement and Emotional Distress

1. Defendants unlawfully confined Plaintiff under conditions that caused physical pain, psychological trauma and multiple bruises, contusions and injuries. The confinement was initiated even after Plaintiff's mother and aunt informed the hospital that Mr. Carbasho was a suicide risk and should not be isolated. While the mattress was thrown on the floor like the Plaintiff was an animal, sheets and a blanket were still present which could have been used to commit suicide.

2. Mr. Carbasho suffered a bruise and bump on his head and other parts of his body (all documented), exposure to his own bodily fluids from being locked in a room with no toilet, unsanitary and uncomfortable conditions from not even having an accessible sink, lack of drinking water at some point that prompted him to drink his own urine because he thought it was water in a pitcher, exposure to isolation, being locked in a room like a prisoner, and receiving no assistance when he was yelling for help because he was falling and injuring himself, even though a policeman/security guard stationed outside the door could look inside and see what was happening. The bruise on top of Plaintiff's head appears to match the dent in a wall inside the room where he was "caged like an animal," signifying that he may have fallen into this wall because he was isolated and treated like a criminal with little supervision, despite a policeman/guard being able to see inside the

room. The hospital was more concerned about the small mark he made on a wall with his fist, but disregarded much of what occurred inside the locked room in the insufferable conditions.

3. The Defendant permitted these egregious violations of the Plaintiff's civil rights and stripped him of his dignity and his inherent right to human dignity and unwavering defense of his civil liberties. His constitutional rights were violated, his human dignity was annihilated and his legal protections were disregarded – all of which inevitably resulted in the isolation that caused his continued downward mental spiral and personal injuries.

4. Under West Virginia law, personal injury includes physical and emotional harm resulting from intentional or reckless conduct. See Syl. Pt.2, Travis v. Alcon Labs, 202 W. Va. 369, 504 S.E.2d 419 (1998).

**PRAYER FOR RELIEF:**

A. Enter a judgment in favor of the Plaintiff and Against the Defendants;

B. Award compensatory damages for pain, suffering, emotional distress and humiliation in an amount to be determined at trial;

C. Award punitive damages under § 1983 for reckless and malicious conduct;

D. Declare Defendants' conduct unconstitutional under the Fourteenth Amendment;

E. Declare Defendants violated Plaintiff's rights under federal and state law;

F. Award reasonable attorneys' fees (if counsel is later obtained);

G. Grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

Helen Carbasho as Next Friend for **Plaintiff Francis Carbasho**
353 Walker Manor Circle
Colliers, WV 26035
304-374-9298
tcarbasho@earthlink.net

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Francis V. Carbasho
_____

By His Next Friend,
_____
Helen Carbasho
_____

_____
Plaintiff,   Pro Se

v.

Wheeling Hospital, Inc.          Civil Action No.: 5:25 cv 126
_____

And
_____
West Virginia University Health System
_____

_____
Defendant(s)

## Certificate of Service

I, *Francis Carbasko By next friend Helen Carbasho* appearing pro se, hereby certify that I have served the foregoing *SUMMONS in A civil Action* upon the defendant(s) by depositing true copies of the same in the United

States mail, postage prepaid, upon the following counsel of record for the defendant(s) on _____

*(List name and address of counsel for defendant(s))*

Wheeling Hospital, Inc.
Registered Agent: Bruce Archer
1 Medical Park Drive
Wheeling, WV 26003

West Virginia University Health System
Registered Agent Christine Vaglienti
1238 Suncrest Towne Center
Morgantown, WV 26505

*Helen Carbasho (Francis Carbasho)*
*(sign your name)*