**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**FRANCIS CARBASHO,**
by his next friend,
**HELEN T. CARBASHO,**

          Plaintiff,

      v.                                    **CIV. ACT. NO. 5:25-CV-176**
                                                  Judge Bailey

**WHEELING HOSPITAL, INC.** and
**WEST VIRGINIA UNIVERSITY**
**HEALTH SYSTEM,**

          Defendants.

**ORDER**

Pending before this Court is defendants' Joint Motion to Dismiss Plaintiff's Complaint [Doc. 12] and Memorandum in Support [Doc. 13], file November 6, 2025. Plaintiff, who is proceeding *pro se*, filed a Response in Opposition [Doc. 18] on November 19, 2025.  Defendants filed a Reply [Doc. 19] on November 26, 2025.  The Motion to Dismiss is now ripe for adjudication.  For the reasons that follow, the Motion [**Doc. 12**] will be granted.

1

**BACKGROUND**

This case concerns an incident at the Emergency Department ("ED") of Wheeling Hospital.  *See generally* [Doc. 1].  Plaintiff Francis Carbasho[1] is an individual who suffers from a history of mental health issues. [Id.].  Specifically, plaintiff asserts that, after admission to the ED in August 2023 for an acute psychiatric episode, he was unlawfully confined in a locked room without a bathroom, a usable sink, or drinking water.   [Id. at 5].  Defendant was not provided a traditional hospital bed, but rather a mattress on the floor which he asserts presented a tripping hazard. [Id.].  While at the hospital, Mr. Carbasho is alleged to have been under acute psychiatric distress, which resulted in him falling multiple times and sustaining injury, punching a wall and allegedly attempting to break a chair, and at one point, ingesting his own urine.  [Id. at 3].  Mr. Carbasho was detained in the ED for four (4) days. [Id.].

Plaintiff brings this action for "custodial mistreatment, deprivation of liberty, unsafe confinement conditions, and violation of federally protected rights." [Id. at 2]. More specifically, plaintiff asserts claims under (1) 42 U.S.C. § 1983; (2) the Americans with Disabilities Act ("ADA;" 42 U.S.C. § 12132); (3) Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and (4) state tort law.  *See* [Doc. 1 at 6–11].  In response to the Complaint, defendants now bring the instant Motion to Dismiss.

---

[1]For purposes of this order, "plaintiff" shall refer to Francis Carbasho, not Helen T. Carbasho, his next friend who brings this suit on his behalf.

**STANDARD OF REVIEW**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of plausibility). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995) (*cert. granted*, *Anheuser-Busch, Inc. v. Schmoke*, 517 U.S. 1206 (1996)). In *Twombly*, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 Fed.App'x. 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into

one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 Fed.App'x. 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

Finally, with regard to *pro se* litigants, this Court is mindful that "*[p]ro se* complaints are held to a less stringent standard than those drafted by attorneys ... and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case." ***Jones v. Lexington Cnty. Det. Ctr.***, 586 F.Supp.2d 444, 446 (D. S.C. 2008) (Duffy, J.) (citations omitted).

## DISCUSSION

### I.   Plaintiff's Constitutional Claims Fail for Lack of State Action.

Plaintiff's primary claim arises under 18 U.S.C. § 1983 for deprivation of federal constitutional rights.  *See* [Doc. 1 at 6–8].  Specifically, plaintiff alleges that defendants were indifferent to his medical needs and violated his rights by wrongfully confining him in an unsafe, unsanitary, and inhumane environment.  *See* [id.].

As defendants point out, a § 1983 claim requires state action; the statute provides:

Every person who, **under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia**, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial

officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (internal quotations and citations omitted). "In sum, private activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (internal quotations and citations omitted); *see also id.* at 181 ("a private entity's action can constitute state action if there is a sufficiently close nexus between the State and the challenged action of the regulated entity that the action of the latter may fairly be treated as that of the State itself, but state involvement without state responsibility cannot establish this nexus.") (internal quotations and citation omitted).

Neither Plaintiff's Complaint nor his Response assert directly that defendants themselves were inherent state actors; rather, he attempts to impose this status on defendants by pointing out that "a Wheeling municipal police officer was stationed outside Plaintiff's hospital room during his confinement." [Doc. 18 at 4].

This Court is of the opinion that the mere presence of a police officer outside plaintiff's room, even if it were at the request of defendants, does not establish a "sufficiently close nexus" such that § 1983 liability would be appropriate.  If plaintiff's rationale for state action were adopted, private citizens could potentially be subject to § 1983 liability simply by virtue of calling the police.  Further, the allegations in the Complaint do not suggest extensive involvement between the defendants and the Wheeling Police Department; the Complaint simply alleges that defendants "coordinat[ed] with the Wheeling Police Department and hospital security to guard [plaintiff's] locked room." [Doc. 1 at ¶ 4].

Further, the Complaint's allegations that Wheeling Hospital staff asked the Wheeling Police Department to press charges against defendant suggests that defendants were indeed operating independently of the police department, not in concert with it. *See* [id]. Specifically, defendants would not need to make their desires known to the police department had their actions truly been intertwined with the Wheeling Police.  Defendants' actions, as alleged, are no different than what happens when a typical private citizen calls the police in response to a dangerous situation, as opposed to more affirmative cooperation between the police and private citizens.  *See Jackson v. Panazes*, 810 F.2d 426, 429 (4th Cir. 1987) (police officer assisted bail bondsmen in (1) granting entrance to an individual's home, (2) dragging said individual from the doorway, and (3) restraining the individual "both physically and by oral advice" while the bail bondsman conducted a search.").  Extending § 1983 claims to this context risks exposing hospitals to constitutional liability simply for taking precautions to keep patients and employees safe.  This Court declines to do so.

6

Finally, because this Court has found that plaintiff's § 1983 allegations lack state action, addressing defendant's arguments as to the lack of a policy, custom, or deliberate indifference is unnecessary.  *See* [Doc. 13 at 8–11].

Accordingly, plaintiff's § 1983 claims fail to state a claim upon which relief can be granted.  Count I of plaintiff's Complaint is therefore **DISMISSED**.

## II.    **Plaintiff's ADA and Rehabilitation Act Claims Fail.**

Plaintiff's ADA and Rehabilitation Act Claims are based on his forced isolation in the ED. [Doc. 1 at 9].  "To make out a basic ADA violation, [a plaintiff] must show that he: (1) has a disability; (2) was otherwise qualified to get some public program, service, or activity; and (3) was denied that program, service, or activity on the basis of his disability." ***Koon v. North Carolina***, 50 F.4th 398, 405 (4th Cir. 2022) (citing ***Nat'l Fed. of the Blind v. Lamone***, 813 F.3d 494, 502–03 (4th Cir. 2016)).  A common way to prove denial on the basis of disability is to prove the failure to make a reasonable accommodation for the disability.  ***Id.*** (citation omitted).  The test for the Rehabilitation Act claim is the same. ***Koon***, 50 F.4th at 403, n.2 ("The Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same. They can be combined for analytical purposes because the analysis is substantially the same.") (internal quotations and citation omitted).

Here, with respect to the isolation issue, this Court does not believe that the facts alleged in the Complaint establish unreasonable conduct by defendants in responding to plaintiff's mental disability or the failure to make reasonable accommodations for it.

This Court first agrees that the majority of the alleged deprivations while plaintiff was confined were unrelated to plaintiff's disability, in contrast to more "traditional" disability

discrimination cases.  *See* **Bone v. Univ. of N. Carolina Health Care Sys**., 678 F. Supp. 3d 660, 669 (M.D. N.C. 2023) (Schroeder, C.J.) (concerning visually impaired individuals being denied "meaningfully accessible communications"); **Basta v. Novant Health Inc.**, 56 F.4th 307, 312 (4th Cir. 2022) (hearing-impaired individual denied interpreter during wife's childbirth).  In other words, a non-working toilet or sink is just as inconvenient for a non-disabled person as it is for a person with a mental disability.  The alleged deprivations have no causal relation to Mr. Carbasho's disability.

Finally, with regard to plaintiff's allegations concerning his isolation from his family, which is arguably the condition of isolation that is most germane to his mental disability, *see* [Doc. 1 at 9, ¶¶ 5–6], this Court believes that, in defendants' words, these allegations are more properly characterized as " disagree[ment] with the manner in which medical care was provided to Mr. Carbasho" rather than allegations of discrimination or denial of a reasonable accommodation.  [Doc. 13 at 12].  Plaintiff does not appear to dispute that the hospital reasonably believed he posed a danger to himself and others at the time alleged in the Complaint.  For example, plaintiff admits in the Complaint that he suffered from suicidal ideation and further does not dispute that he punched one of the walls in the ED.  *See* [id. at 3, 9].  Accordingly, isolation is a reasonable (and perhaps the only) option available to defendants in circumstances such as those alleged in the Complaint.

In other words, plaintiff's Complaint is not so much about the fact that Mr. Carbasho was isolated and confined due to his mental illness; rather, it is more about the *conditions* of his confinement.  As such, plaintiff does not appear to dispute the objective necessity or reasonableness of taking measures to ensure the safety of mentally disabled

individuals; he just disagrees with how defendants went about doing it.  That issue is more appropriately decided in the context of a tort claim, not a federal discrimination claim.

On the whole, the Complaint describes how defendants chose to respond to a developing medical situation caused by plaintiff's acute mental distress; it does not suggest that plaintiff was denied medical benefits or accommodations specifically because of his mental disability, and therefore fails the test outlined above in *Koon*.

In his Response, plaintiff additionally highlights his allegations that "Defendants worked with the local police to file a criminal charge ... against Plaintiff shortly after he was confined ... representing disability discrimination and punitive treatment based on mental illness." [Doc. 18].

Defendants, meanwhile, contend in their Reply that plaintiff is attempting to assert liability for what is, in essence, underlying (and unprotected) criminal conduct.

This Court agrees with defendants.  There can be no retaliation where the underlying conduct that is the subject of the alleged "retaliation" is criminal in nature, as a retaliation claim requires a plaintiff to allege "(1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir.2001)). It goes without saying that punching a wall in a hospital ED or otherwise posing a risk to the safety of others is not protected conduct.  Whether plaintiff is  truly responsible for such conduct is instead a matter for separate criminal proceedings.

Accordingly, plaintiff's ADA and Rehabilitation Act claims (Counts II and III of the Complaint), are **DISMISSED**.

**III.    This Court Declines to Retain Supplemental Jurisdiction over Plaintiff's State Law Claims because Plaintiff's Federal Claims Have Been Dismissed.**

Because plaintiff's federal claims have been dismissed, this Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Count IV of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**CONCLUSION**

Defendants' Motion to Dismiss [**Doc.12**] is **GRANTED**.  Counts I–III of plaintiff's Complaint, the federal law claims, are **DISMISSED WITH PREJUDICE**.  Count IV of the Complaint, the state law/tort claim, is **DISMISSED WITHOUT PREJUDICE**.  The Clerk is directed to **STRIKE** this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel herein and to mail a copy to the *pro se* plaintiff via certified mail, return receipt requested, at the address listed on the docket sheet.

**DATED**: December 2, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE